Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, California 94607
Tel: 510-836-4200
Fax: 510-836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLA VARIO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., a Delaware corporation,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1. Plaintiff Carla Vario ("Vario" or "Plaintiff") brings this Class Action Complaint against Defendant Uber Technologies, Inc. ("Defendant" or "Uber") to stop its practice of sending unsolicited text messages to cellular telephones after the cellphone owner opted-out of the receipt of additional messages, and obtain redress for all persons similarly injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## **PARTIES**

2. Plaintiff Carla Vario is a natural person over the age of eighteen (18) who resides in New Port Richey, Pasco County, Florida.

CLASS ACTION COMPLAINT                    1

3.      Defendant Uber Technologies, Inc. is a corporation incorporated and existing under the laws of the State of Delaware whose primary place of business and corporate headquarters is located at 1455 Market Street, 4th Floor, San Francisco, California 94103.

**JURISDICTION & VENUE**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, a federal statute. This Court also has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, because the alleged Class consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA apply.

5.      This Court has personal jurisdiction over Uber and venue is proper in this District because it solicits significant business in this District, is registered to do business in this District, is headquartered in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

**COMMON ALLEGATIONS OF FACT**

6.      Bulk text messaging, or SMS, has emerged as a direct method of communicating with consumers. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

7.      When an SMS message call is successfully made, the recipient's cell phone rings or vibrates, alerting him or her that a call is being received. As cellular telephones are mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

8.      Defendant Uber is a peer-to-peer ridesharing service headquartered in San Francisco, California.

9.      In an effort to effectuate Uber's business, Defendant utilizes bulk SMS messaging to reach consumers.

10.      Defendant made, or had made on its behalf, the same (or substantially the same) text messages calls *en masse* to thousands of cellular telephone numbers throughout the United States, using the same number even after such persons replied "Stop".

11.      In sending the text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

12.      The problem for Uber is that it fails to properly honor opt-out requests.

13.      That is, Uber continues to send unauthorized SMS messages to cellular subscribers who have expressly "opted-out" or requested not to receive text messages by responding "STOP" or with similar commands. Any SMS text message (other than a final, one-time confirmation text message confirming the recipient's desire to not receive such messages) sent to a cellular subscriber after receiving an express STOP or similar request was sent without prior express consent in violation of the TCPA.

14.      The FCC has made clear that companies must provide an opt-out mechanism in their text messages and that—at most—a single text may be sent after the consumer exercises his/her right to opt out confirming the opt out. *See* In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991, Declaratory Ruling as to Petition of SoundBite Communications, Inc., CG Docket No. 20–278 (Nov. 29, 2012) ("SoundBite Ruling "); *see also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 272 (3d Cir. 2013) ("In sum, we find that the TCPA provides consumers with the right to revoke their prior express consent to be contacted on

cellular phones by autodialing systems."); *see also Munro v. King Broad. Co.*, No. C13-1308JLR, 2013 WL 6185233, at *3 (W.D. Wash. Nov. 26, 2013) ("[T]he weight of authority suggests that consent may be revoked under the TCPA and that if messages continue after consent is revoked, those messages violate the TCPA.") (unpublished decision) (collecting cases).

15.     Notwithstanding such authorities, Defendant ignores the FCC and industry guidelines and instead fails to honor requests by consumers to opt-out or unsubscribe to the SMS text messages.

16.     Despite receiving multiple express "STOP" requests from Plaintiff and other cellular subscribers, Defendant continues to send automated text messages to these subscribers.

17.     Defendant knows or acts in conscious disregard of the fact that its SMS text messages to these cellular subscribers are unauthorized. "STOP" requests are, by design, sent to Defendant thereby directly informing (and at the very least putting on actual and constructive notice) Defendant that any subsequent messages are unauthorized. Ultimately, consumers are forced to bear the costs and annoyance of receiving these unsolicited and unauthorized text messages.

## FACTS SPECIFIC TO PLAINTIFF

18.     In or around April 2018, Plaintiff Vario began receiving text messages on her cellular telephone from Uber, which purported to convey a code.

19.     In an effort to end the persistent transmission of text messages from Uber, Plaintiff replied "Stop."

20.     Thereafter, Defendant responded by acknowledging the stop request by stating "SMS from Uber is now disabled. To re-enable, reply START." Plaintiff never replied START to re-enable.

1
2
3
4
5
6
7
8
9
10
11



12    21.    Later the same day, Uber sent additional text messages to Plaintiff, again providing

13  her with an "Uber code."

14    22.    Plaintiff continued to receive virtually identical text messages, which were sent for

15  a commercial purpose, on a daily basis. The messages advertised Uber's ride-sharing services and

16  provided a code for the use/accessing of such services.

17    23.    Every text message was sent from the telephone number 954-504-6058, which is

18  owned by Defendant or its agent.

19    24.    Despite repeated attempts to opt-out of future text messages—including various

20  opt-out words, such as "Stop," "Stop all," and "Sms off"—Defendant, despite acknowledging the

21  opt-out requests, refused to end the transmission of text messages.

22    25.    By continuing to make unauthorized text message calls as alleged herein, Uber has

23  caused Plaintiff and other consumers actual harm and cognizable legal injury. This includes the

24  aggravation, nuisance, and invasion of privacy that results from the receipt of such unwanted text

25  messages in addition to a loss of value realized for the monies consumers paid to their wireless

26  carriers for the receipt of such text messages. Furthermore, the text messages interfered with

27

28

CLASS ACTION COMPLAINT                    5

Plaintiff's and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. The text messages were annoying and persisted despite being told to Stop. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, interfering with their use and enjoyment, and appropriating cellular minutes and data.

26.     In the present case, a consumer could be subjected to multiple unsolicited text message advertisements given the fact that Defendant does not provide any functioning mechanism to opt-out and, thus, fails to honor validly submitted opt-out requests.

27.     Having tried to no avail to get the messages to stop, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*—which prohibits unsolicited voice and text calls to cell phones—to end the unlawful conduct of Defendant.

28.     On behalf of the Class, Plaintiff also seeks an injunction requiring Defendant to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and the Class defined as follows:

> **Replied Stop Class:** All persons in the United States who (1) from August 18, 2017 through the date notice is sent to the Class; (2) received at least one text message on their cellular telephone, (3) from Defendant, or a third person acting on behalf of Defendant, (4) replied to the text message with the words STOP, END, CANCEL, or similar language, and (5) thereafter received at least one additional text message to their same cellular telephone number other than a message simply confirming their opt-out request.

30.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who

properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

31. **Numerosity:** The exact number of members within the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed text messages to thousands of consumers who fall into the defined Class. The exact number of members of the Class can only be identified through Defendant's records.

32. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct.

33. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff and her counsel have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

34. **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct; and

(c) Whether Defendant systematically sent text messages to consumers after they opted-out of the receipt of further text messages by responding Stop.

CLASS ACTION COMPLAINT                    7

35.     **Conduct Similar Towards All Class Members:** By committing the acts set forth in this pleading, Defendant has acted or refused to act on grounds substantially similar towards all members of the Class so as to render final injunctive relief and corresponding declaratory relief appropriate so as to warrant certification under Rule 23(b)(2).

36.     **Superiority & Manageability:** This case is also appropriate for class certification under Rule 23(b)(3) because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured. Also, there are no pending governmental actions against Defendant for the same conduct.

## CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*
### (On behalf of Plaintiff and the Replied Stop Class)

37.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

38.     Defendant sent unsolicited and unwanted text message advertisements to telephone numbers belonging to Plaintiff and the other members of the Replied Stop Class on their cellular telephones after the recipient informed Defendant that s/he no longer wished to receive text messages from Defendant.

CLASS ACTION COMPLAINT                    8

39.     Defendant sent the text messages using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. That is, Defendant utilized equipment that sent the text messages to Plaintiff and other members of the Replied Stop Class simultaneously and without human intervention.

40.     The text messages to Plaintiff and the Replied Stop Class were sent after any supposed consent had been expressly revoked by responding with an opt-out request, such as STOP, END, CANCEL, or similar language. This alone violates the TCPA.

41.     Additionally, Defendant's supposed opt-out mechanism is not cost free. Among other things, it requires the transmission of data from the user's cell phone that results in a reduction of the user's allowable data.

43.     Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

44.     As a result of Defendant's unlawful conduct, Plaintiff and the other members of the Replied Stop Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

45.     Defendant's conduct was willful. Defendant had amble notice of the Stop requests and even confirmed the receipt of said requests. Thus, in the event that the Court determines that Defendant's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Carla Vario, on behalf of herself and the Class, prays for the following relief:

A.     An order certifying the Class as defined above, appointing Plaintiff Vario as the representative of the Class, and appointing her counsel as Class Counsel;

B.      An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

C.      An order declaring that Defendant's actions, as set out above, violate the TCPA

D.      An order declaring that Defendant's actions, as set out above, were willful, and awarding treble damages;

E.      A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

F.      An injunction requiring Defendant to cease all unsolicited calling activities, and otherwise protecting the interests of the Class;

G.      An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

H.      Such other and further relief that the Court deems reasonable and just.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


                                         Respectfully submitted,

Dated: June 27, 2018                     **CARLA VARIO**, individually and on behalf of all
                                         others similarly situated,


                                         By: s/  Rebecca Davis
                                              One of Plaintiff's Attorneys

                                         Richard T. Drury (SBN 163559)
                                         richard@lozeaudrury.com
                                         Rebecca Davis (SBN 271662)
                                         rebecca@lozeaudrury.com
                                         Lozeau Drury LP
                                         410 12th Street, Suite 250
                                         Oakland, California 94607
                                         Tel: 510-836-4200
                                         Fax: 510-836-4205

CLASS ACTION COMPLAINT                   10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Taylor Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Class

*Pro Hac Vice admission to be sought*